UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARIA MEDINA, o/b/o GUSTAVO JIMENEZ-COLON,<br><br>     Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>     Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 05-3107 (JEI)<br><br>**OPINION** |

**APPEARANCES:**

POLONSKY & POLONSKY
By: Alan H. Polonsky, Esq.
512 South White Horse Pike
Audubon, New Jersey 08106
     Counsel for Plaintiff.

CHRISTOPHER J. CHRISTIE, UNITED STATES ATTORNEY
By: John M. Kelly, Esq.
Special Assistant U.S. Attorney
C/o Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278-0004
     Counsel for Defendant.

**IRENAS**, Senior District Judge:

Plaintiff Maria Medina ("Medina"), on behalf of her minor ward, Gustavo Jimenez-Colon ("Claimant"), seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), of the final determination of Defendant Jo Anne B. Barnhart, the Commissioner of the Social Security Administration

("Commissioner"), denying her application for Supplemental Security Income disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*  For the following reasons, this Court will affirm in part and remand in part the Commissioner's decision for further proceedings.

**I.**

On February 25, 2003, Medina filed an application for Supplemental Security Income on behalf of Claimant.  (R. at 55-57.)  The application contended that Claimant was entitled to benefits because he suffered from a disability that began on October 1, 2002.  (R. at 55.)  At the time of the application, Claimant was eight years old.  (R. at 55.)

The application was initially denied on June 26, 2003. (R. at 24, 27.)  Medina requested reconsideration by the Social Security Administration of the initial denial.  (R. at 30.)  Her request was denied on September 30, 2003, was also denied.  (R. at 32.)  Medina requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 16, 2004.  (R. at 36.)

In a decision dated February 18, 2005, ALJ Daniel W. Shoemaker, Jr., denied the request for benefits, concluding that Claimant was not disabled within the meaning of the Social Security Act.  (R. at 15-23.)  ALJ Shoemaker determined that Claimant suffers from asthma and attention deficit hyperactivity

2

disorder ("ADHD") and was not engaged in substantial gainful activity since the onset of his disability.  (R. at 16.) However, Claimant's impairment did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. § 494, Subpart P, Appendix 1 ("Appendix"), as required by 20 C.F.R. § 416.924(d); nor did his impairment functionally equal the severity of any impairment described in the Appendix.  (R. at 16.)  Accordingly, the ALJ concluded that Claimant was not under a disability as defined by the Social Security Act at any time through the date of the ALJ's decision.  (R. at 23.)

The Appeals Council denied Medina's request for review of ALJ Shoemaker's decision on April 22, 2005.  (R. at 7-9).  ALJ Shoemaker's decision thus stands as the final decision of the Commissioner.  Medina filed the instant appeal with this Court on June 14, 2005.

## II.

Claimant was born on July 5, 1994.  It is undisputed that he suffers from asthma and ADHD, but the severity of his impairments is disputed.  The record before the Court contains the testimony of Claimant and Medina from the hearing before ALJ Shoemaker on August 16, 2004, progress reports for Claimant prepared by Camden City Public Schools ("CCPS"), consultative examination reports of Kenneth Goldberg, Ph.D., Lawrence Mintzer, Ph.D., and Steven

3

Klein, D.O., as well as other school and medical records.

Hearing testimony

At the hearing before ALJ Shoemaker, Claimant testified that he liked school, and that his favorite subjects were math and spelling. (R. at 229.) He admitted that he sometimes got into trouble in school for getting out of his seat, for fighting, and for not doing his homework. (R. at 230.) He also testified that he ate lunch at school with several friends, and played sports and Nintendo with others after school. (R. at 230-31.) Although he has asthma and uses an inhaler, he is able to play baseball at school, but cannot run in gym class. (R. at 234-35.)

Medina testified before ALJ Shoemaker regarding Claimant's social history. (R. at 236-42.) Medina knew Claimant's father, but never knew his mother. (R. at 237.) Claimant's biological mother resides in Puerto Rico. (R. at 237.) Claimant's father was incarcerated when he was two months old and since that time, Claimant and his brother have been in the custody of Medina. (R. at 229.) She also indicated that Claimant cannot take medications for his ADHD because of he has a heart condition[1] and asthma. (R. at 239.)

_____

[1]Claimant's application for disability benefits is not based on his heart condition.

Educational records

Claimant's third grade classroom teacher and his special education teacher completed a teacher questionnaire and assessment of Claimant's abilities, dated March 21, 2003 (March 2003 Assessment"). (R. at 98-105.) They reported that Claimant had slight problems acquiring and using information and attending and completing tasks. (R. at 99-100.) Specifically, Claimant demonstrated slight problems with reading and comprehending written material and with comprehending math problems and applying problem-solving skills. (R. at 99.) Claimant also had slight daily problems with waiting to take turns, changing from one activity to another without being disruptive, and working without distracting himself or others. (R. at 100.) Furthermore, he exhibited slight problems with carrying out multi-step instructions, completing work accurately without careless mistakes, and working at a reasonable pace. (R. at 100.)

According to the March 2003 Assessment, Claimant also had obvious problems with making and keeping friends and playing cooperatively with other children. (R. at 101.) He was given time-outs to implement behavior modification. (R. at 100.) Claimant's speech could be understood by his assessors. He also demonstrated no problems moving about and manipulating objects. (R. at 102.) Claimant had slight problems handling frustration

5

appropriately and being patient when necessary.  (R. at 103.)

At the end of the 2002-2003 school year, Claimant was promoted from third to fourth grade.  (R. at 187.)  A progress report from Coopers Poynt School shows that Claimant's grades were in the B to C range in the third grade.  (Id.)

According to an Individualized Education Program ("IEP") report prepared in the spring of 2003 by CCPS, Claimant struggled with writing, but showed improvement in his ability to comprehend written and oral material.  (R. at 176.)  A regular classroom program was recommended for Claimant for the 2003-2004 school year, along with supplemental co-teaching in reading, math, social studies, science, and writing.  (R. at 174, 179.)  The IEP indicated that Claimant became eligible for special educational services on October 19, 1999, when Claimant was in kindergarten. (R. at 174.)

The IEP prepared in the spring of 2004 by CCPS for the 2004-2005 school year describes Claimant as a "fourth grade regular ed [*sic*] student who receives special ed [*sic*] resource/inclusion services."  (R. at 117.)  His fourth grade teacher reported that Claimant was often inappropriate with his peers, using "problematic" behavior and language.  (Id.)  While Claimant often sought approval from his teachers, his methods were also inappropriate.  (Id.)  Claimant's oral comprehension was deemed competitive with other students at his grade level, but his

6

reading comprehension was considerably weaker.  (Id.)  It was recommended that Claimant continue in a regular classroom program for the 2004-2005 school year, with supplemental co-teaching. (Id.)

He made "great progress" in writing paragraphs and short essays, but his spelling, punctuation, and capitalization were extremely problematic.  (Id.)  Claimant's math skills were at an early to middle third grade level. (Id.)  His teacher found that his reasoning and comprehension skills in math were considerably lower than his computation skills.  (Id.)  Claimant's accuracy in solving math problems was somewhat poor because of carelessness in application of the skills he had learned.  (Id.)

Claimant's fourth grade marks were generally in the C range, but he demonstrated problems in the second and third quarters in conduct and work and study habits; he received a D or below in those areas.  (R. at 129.)  A Brigance reading comprehension subtest administered to Claimant in fourth grade indicated that he was reading at a late second grade to early third grade level. (Id.)  At the end of the 2003-2004 school year, Claimant was promoted from fourth to fifth grade.  (R. at 129.)

Psychological evaluations

In May 29, 2003, Kenneth Goldberg, Ph.D., examined Claimant at the request of the Social Security Administration.  (R. at

154-157.)  Dr. Goldberg reported that Claimant was a "shy but
friendly child," of average height and weight.  (R. at 155.)  Dr.
Goldberg reported that Claimant's thought processes were clear,
but his inattention was a dominant issue in the examination.  (R.
at 155.)

Dr. Goldberg administered the Wechsler Intelligence Scale
for Children test to Claimant.  Claimant's verbal intelligence
quotient ("IQ") score was 83, performance IQ 80, and full scale
IQ 80, all exhibiting low average intellectual functioning.  (R.
at 155-156.)  Dr. Goldberg noted that based on the pattern of
responses, he felt that Claimant was limited by his attention
deficit problems in the test taking and that his actual IQ was
probably about average.  (R. at 156.)  Dr. Goldberg gave Claimant
a good prognosis, and concluded that he would do well with
appropriate educational procedures.  (R. at 156.)

On June 3, 2003, Claimant was seen by Lawrence Mintzer,
Ph.D., for a psychological evaluation.  (R. at 158-162.)  Dr.
Mintzer performed a DSM-IV multiaxial assessment.  (R. at 162.)
He found that Claimant suffered from ADHD, combined type,
indicating that Claimant has had six or more symptoms of both
inattention and hyperactivity-impulsivity persisting for at least
six months.  (Id.; see also Diagnostic and Statistical Manual of
Mental Disorders 80 (Am. Psychiatric Assoc. ed., 4th ed.
1994)("DSM-IV").)  Dr. Mintzer concluded that Claimant had no

8

personality disorders nor was Claimant mentally retarded, and
noted that Claimant suffered from asthma and a heart condition.
(R. at 162.)  He also noted that Claimant was not living with
either biological parent.  On the Global Assessment of
Functioning scale,[2] Dr. Mintzer gave Claimant a 57 rating,
reflecting moderate difficulty in social, occupational, or school
functioning.  (R. at 162.)

Dr. Mintzer also reported that while Claimant indicated no
signs of psychosis, he did present with moderate intellectual
deficits and behavioral problems, which were sufficiently great
to interfere with his academic and social functioning.  (R. at
161.)  He found that Claimant was moderately impaired due to his
intellectual deficits, and concluded that Claimant's prognosis
was guarded.  (R. at 162.)


Medical records and evaluations

Claimant was examined by Steven Klein, D.O., on June 9,
2003, in conjunction with his application for disability
benefits.  (R. at 163.)  Dr. Klein noted that Claimant has a
bicuspid aortic valve with a significant aortic murmur and a
history of asthma, as well as probable ADHD and oppositional
disorder.  (R. at 165.)  He reported that Claimant suffers from

---

[2]The Global Assessment of Functioning is an evaluation tool
used in the DSM-IV multiaxial assessment to rate an examinee's
overall level of functioning.  *See* DSM-IV at 30.

asthma attacks twice a week, with each attack lasting approximately five minutes.  (Id.)  Claimant suffers from coughing and wheezing between attacks.  (Id.)  Claimant occasionally has more severe attacks but has never been hospitalized.  (Id.)  Claimant takes Advair and albuterol for his asthma.  (Id.)  Dr. Klein also reported that Claimant stated that his activities are limited by asthma, but not his heart condition.  (R. at 164-65.)

Claimant admitted to Dr. Klein that "he is somewhat difficult in school."  (R. at 164.)  Dr. Klein wrote that:

> He does not appreciate following any of the rules, he balks at them.  He feels that he should be able to do whatever he wants to do when he wants to do it, which is classical oppositional disorder.

(Id.)  Dr. Klein noted, however, that Claimant was pleasant and appropriate during the examination.  (Id.)  Dr. Klein did not administer or employ any diagnostic tests.

The record also contains a variety of medical records from CamCare Health Corporation, the Cardiac Center at the Children's Hospital of Philadelphia, the Virtua West Jersey Health System Emergency Department, and Cooper Hospital/University Medical Center.  (R. at 130-53, 194-219.)  These records document his treatment for asthma, constipation and heart problems, as well as ordinary childhood illnesses.

D. Scott Alenick, M.D., and J.F. Joynson, Ph.D., medical consultants for the Social Security Administration, reviewed

Claimant's medical records and concluded that Claimant's
impairments did not meet, medically equal or functionally equal
any of the listed impairments.  They noted less than marked
limitations in all six of Claimant's functional domains:
acquiring and using information; attending and completing tasks;
interacting and relating with others; moving about and
manipulating objects; caring for himself; and health and physical
well-being.  (R. 166-72.)

### III.

The standard of review used by courts in reviewing final
determinations of the Commissioner is set forth in 42 U.S.C.
§ 405(g) and 42 U.S.C. § 1383(c)(3).  Findings of fact by the
Commissioner that are supported by "substantial evidence" are
conclusive.  42 U.S.C. § 405(g); 42 U.S.C. § 1283(c)(3).
Substantial evidence has been defined as "such relevant evidence
as a reasonable mind might accept as adequate to support a
conclusion."  *Richardson v. Perales*, 402 U.S. 389 (1971) (quoting
*Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *Lewis
v. Califano*, 616 F.2d 73, 76 (3d Cir. 1980).  The administrative
decision "should be accompanied by a clear and satisfactory
explanation of the basis on which it rests."  *Cotter v. Harris*,
642 F.2d 700, 704 (3d Cir. 1981).

The decision should indicate not only the evidence that

11

supports the ALJ's conclusion, but also any "significant probative evidence" that was rejected and the reasons for its rejection. *Id.* at 705.  The Third Circuit has elaborated further on the proper standard of review stating:

> [O]ur decisions make clear that determinations of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

In reaching a conclusion that a claimant is capable of performing a certain category of work, the ALJ must analyze and explain the weight he has given to all probative evidence.  *Gober v. Mathews*, 574 F.2d 772, 776-77 (3d Cir. 1978).  Although deference is given to administrative decisions, it is the duty of the reviewing court to scrutinize the entire record to determine whether the ALJ's findings are rational and supported by substantial evidence.  *Id.*  It is within this Court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand.  42 U.S.C. § 405(g); *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

## IV.

An ALJ employs a three-step process when evaluating a child's claim of disability.  20 C.F.R. § 416.924.  In the first

12

step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity" as defined in 20 C.F.R. § 416.972.  § 416.924(b).  If the claimant is so engaged, his application will be denied.  § 416.924(b).

The ALJ next determines whether the claimant has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months."  § 416.906.  A claimant who does not have a "severe impairment" is not disabled.  § 416.924(c).

Finally, in order to be considered disabled for the purposes of the Social Security Act, the claimant's impairment must meet, or be medically or functionally equal in severity to, an impairment listed in the Appendix.  § 416.924(d).  A claimant's impairment medically equals a listing when "the medical findings are at least equal in severity and duration of the listed findings."  § 416.926(a).  An ALJ will compare medical evidence in the record to corresponding medical criteria shown for the listed impairment to make this determination.  § 416.926(a).

If a claimant's impairment does not meet or medically equal a listed impairment, the ALJ will next determine if the impairment is functionally equal to the listed impairments.

13

§ 416.926a(a).  To satisfy the "functionally equal" standard, a claimant must show that she suffers from an impairment of "listing-level" severity, meaning that the impairment "results in 'marked' limitations of two domains of functioning or 'extreme' limitation in one domain."  § 416.926a(a).  A claimant's functional domains are evaluated within six categories: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  § 416.926a(b)(1)(i)-(vi).

A claimant demonstrates a "marked" limitation in a domain if his impairment seriously interferes with his ability to "independently initiate, sustain or complete activities." § 416.926a(e)(2)(i).  A "marked" limitation is one that is "more than moderate" but "less than extreme."  *Id.*  An "extreme" limitation interferes very seriously with the claimant's ability to "independently initiate, sustain or complete activities." § 416.926a(e)(3)(I).  An extreme limitation is more than marked but does not mean a total lack or loss of ability to function. *Id.*

### V.

In this case, the first two steps of ALJ Shoemaker's

14

determination are uncontested.  Claimant has never been engaged
in substantial gainful activity.  (R. at 16.)  The ALJ concluded
that Claimant's attention deficit hyperactivity disorder and
asthma are severe impairments because the disorders caused more
than minimal functional limitations and have lasted for more than
twelve months.  (Id.)  Claimant contests the ALJ's determination
at the third stage of the process that his impairments did not
meet, or medically or functionally equal, a listed impairment.
(Id.)

ALJ Shoemaker determined that "the claimant [sic]
impairments do not meet or medically equal the criteria of any of
the listed impairments of Appendix 1, Subpart P, Regulations No.
4, giving particular consideration to Medical Listing 103.00 and
112.00, as well as 3.00 and 12.00."[3]  (Id.)  With regard to
functional equivalency, the ALJ concluded "[t]he assertions as to
the claimant's symptomology, functional limitations and
restrictions on activities of daily living have been considered
in light of the factors set forth in 20 C.F.R. 416.929 and SSR
96-7p, and are found to be generally corroborated and
substantiated by the evidence of record as a whole, but do not
establish disability."  (R. at 20-21.)  He determined that

---

[3]Sections 103.00 and 112.00 include the medical criteria for
children's respiratory system disorders and mental disorders,
respectfully.  Sections 3.00 and 12.00 set forth the criteria for
adults.

Claimant had a marked limitation in the domain of interacting and relating to others, and less than marked limitations in all other domains.  (R. at 22.)

A.

Claimant argues that ALJ Shoemaker's explanation of his conclusion that Claimant's impairments do not meet or medically equal any listed impairments is insufficient and fails to meet the requirements of *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000).[4]  In *Burnett*, the Third Circuit determined that an ALJ's conclusory statement that the claimant's impairment did not meet or equal any listed impairment was inadequate because it did not permit any meaningful judicial review of the ALJ's decision. *Id.* at 119-120.  The Court remanded the case for further discussion of the evidence and an explanation of the reasoning supporting the ALJ's determination that the claimant's impairment, although severe, did not meet or equal any listed

---

[4]This Court rejects the Commissioner's argument that *Burnett* is somehow distinguishable based upon the fact that *Burnett* dealt with an adult's claim for disability benefits and this case involves a child.  The Third Circuit has on several occasions applied *Burnett* to cases involving children's claims for disability benefits.  *See Santiago v. Commissioner*, 131 Fed. Appx. 344 (3d Cir. 2005)(*Burnett* applied to child's claim for disability benefits based upon asthma and borderline intellectual functioning); *Jaramillo v. Commissioner*, 130 Fed. Appx. 557 (3d Cir. 2005)(*Burnett* applied to child's claim for disability benefits based upon Guillan-Barré syndrome, transient hand tremors, nocturnal enuresis, ADHD, and a learning disorder).

impairment.  *Id.* at 120.

ALJ Shoemaker's discussion of whether Claimant's
impairments, and in particular asthma, met or medically equaled
any of the listed impairments is similarly flawed.  While the ALJ
discussed some of the evidence presented by Claimant in
conjunction with his conclusion that Claimant's impairments did
not functionally equal a listed impairment, ALJ Shoemaker did not
discuss or even mention medical evidence relevant to the
determination of whether Claimant's impairment met the criteria
of the listing for asthma.

The Appendix listing for asthma provides:

103.03 *Asthma*. With:

A.  $FEV_1$ equal to or less than the value specified
in table I of 103.02A;

Or

B.  Attacks (as defined in 3.00C), in spite of
prescribed treatment and requiring physician
intervention, occurring at least once every 2 months or
at least six times a year.  Each inpatient
hospitalization for longer than 24 hours for control of
asthma counts as two attacks, and an evaluation period
of at least 12 consecutive months must be used to
determine the frequency of attacks;

Or

C.  Persistent low-grade wheezing between acute
attacks or absence of extended symptom-free periods
requiring daytime and nocturnal use of sympathomimetic
bronchodilators with one of the following:

1.  Persistent prolonged expiration with
radiographic or other appropriate imaging
techniques evidence of pulmonary hyper-
inflation or peribronchial disease; or

2.  Short courses of corticosteroids that

17

> average more than 5 days per month for at
> least 3 months during a 12-month period;

Or

> D.  Growth impairment as described under the
> criteria in 100.00.

Appendix, § 103.03.  The ALJ's opinion includes no discussion of
these criteria.

For example, ALJ Shoemaker's opinion does not mention the
evidence in the record of Claimant's visits to the doctor for
asthma attacks or the fact that Claimant was prescribed
corticosteroids for the treatment of his condition.  This Court
will not guess whether ALJ Shoemaker overlooked, ignored or
analyzed this relevant evidence (yet did not include such
analysis in his opinion).  The Court cannot engage in any
meaningful judicial review of the ALJ's opinion.  *See Albury v.
Commissioner*, 116 Fed. Appx. 328, 330 (3d Cir. 2004)("[O]ur
primary concern has always been the ability to conduct meaningful
judicial review."); *cf. Jones v. Barnhart*, 364 F.3d 501, 505 (3d
Cir. 2004)(ALJ must provide a "sufficient development of the
record and explanation of findings to permit meaningful
review.").

Unlike in *Santiago v. Commissioner*, the ALJ's somewhat
detailed analysis of the six functional domains here is not
sufficient to allow meaningful review of his determination that
Claimant's asthma did not meet or medically equal any of the

18

listed impairments.[5]  131 Fed. Appx. 344, 346 (3d Cir.
2005)(*Burnett* satisfied where ALJ specifically considered medical
evidence of claimant's asthma in analyzing claimant's functional
limitations).  The evidence relevant to a determination of
whether Claimant's impairment met the criteria for the asthma
listing is altogether different from the evidence relevant to a
discussion of Claimant's functional limitations.

A child's asthma will likely not impact the domains of
acquiring and using information, attending and completing tasks,
interacting and relating to others.  The evidence discussed in
ALJ Shoemaker's opinion - school report cards, individualized
education plans and teachers' notes, and psychological or
psychiatric examinations - is simply not relevant to whether
Claimant's impairment meets the listing criteria for asthma.

The "Childhood Disability Evaluation Form" cited in the

---

[5]This Court concludes, however, that the ALJ's discussion of
the six functional domains is sufficient to allow meaningful
review of the determination that Claimant's ADHD did not meet or
medically equal any of the listed impairments.  The type of
evidence considered by the ALJ is relevant to the criteria for
ADHD found in Section 112.11 of the Appendix, such as Claimant's
performance in school and on standardized tests, as well as his
behavior and social skills.  The listing for ADHD requires
medically documented findings of marked inattention,
impulsiveness and hyperactivity, as well as two of the following:
(a) marked impairment in age-appropriate cognitive/communicative
function; (b) marked impairment in age-appropriate social
functioning; (c) marked impairment in age-appropriate personal
functioning; and (d) marked difficulties in maintaining
concentration, persistence or pace.  Appendix § § 112.02(B)(2)
and 112.11.

Commissioner's brief, although not by ALJ Shoemaker, includes little detail beyond a check marked in a box indicating that Claimant's impairment or combination of impairments is severe but does not meet, medically or functionally equal the listings.  (R. at 166-72)  The only listing mentioned on the form is 112.00, the listing for mental disorders.  There is an unintelligible scrawled paragraph in the area for discussion of the functional domain of health and physical well-being.  It does not appear to contain the word "asthma."  There is no mention of asthma in the section entitled "Explanation of Findings."  This Court cannot determine whether ALJ Shoemaker credited this report or rejected it, and thus, no meaningful review of his determination that Claimant's impairment did not meet or medically equal the listing criteria for asthma is possible.[6]

---

[6]The short shrift given by the ALJ's opinion to Claimant's claim for benefits based upon his asthma is underscored by the reports of the consulting medical providers commissioned by the State of New Jersey Department of Labor's Division of Disability Determination Services.  The Court assumes that these consultative examinations were obtained pursuant to the requirements of the Code of Federal Requirements because the medical information provided by Claimant was not sufficient to make a determination regarding benefits eligibility.  *See* 20 C.F.R. § § 416.912(f), 416.917-919q.  Two of the consultations were conducted by psychologists and one by a medical doctor, Steven Klein, D.O.

Other than discussing Claimant's symptoms, Dr. Klein performed no examinations to determine Claimant's eligibility for disability benefits based upon his asthma.  Dr. Klein did not conduct any pulmonary function testing, as detailed in Section 103.00 of the Appendix and required in Part A of the asthma listing, Section 103.03.  He did not employ any radiographic or other imaging techniques to document pulmonary hyperinflation or

B.

Medina also contests ALJ Shoemaker's determination that Claimant had less than marked limitations in the domains of acquiring and using information, and attending and completing tasks.  With regard to these two functional domains, the Court concludes that the ALJ's decision is supported by substantial evidence.

While the ALJ's opinion is deficient in some respects, it adequately discusses the evidence relevant to these two functional domains.  ALJ Shoemaker discussed Claimant's school records, which indicate that Claimant has slight problems acquiring and using information.  (R. at 18-20.)  The ALJ noted that Claimant functioned below grade level in reading and mathematics, and earned grades of B and C in all his subjects.

---

peribronchial disease, as required in Part B of the asthma listing.  Dr. Klein noted that Claimant has not required corticosteroids to treat his asthma "in the past several years," but did not indicate whether Claimant has ever taken corticosteroids to treat his asthma or how frequently they were required.  (R. at 163.)

Claimant relies on CamCare Health Corporation for his medical services, a federally qualified health center which provides health care to impoverished, medically underserved clients.  *See* New Jersey Primary Care Association, http://www.njpca.org/FQHC/default.aspx (last visited May 23, 2006).  He likely does not have access to the advanced diagnostic techniques called for by the listing criteria for asthma.  It hardly seems fair to require his attendance at the consultative examination, *see* 20 C.F.R. § 416.918, and then not perform any of the tests required for him to prove his eligibility for disability benefits.

(Id.)  ALJ Shoemaker also discussed Claimant's IQ scores, on which Claimant scored in the low average range of intellectual functioning.  (Id.)  There is sufficient evidence in the record to support the ALJ's conclusion that Claimant suffered no more than a moderate limitation in this domain.  *See* § 416.926a(e)(2)(i) (a "marked" limitation is one that is "more than moderate" but "less than extreme").

The ALJ also discussed the reports of Claimant's teachers indicating that Claimant had slight problems in the area of attending and completing tasks.  ALJ Shoemaker noted that Claimant's fourth grade teacher stated that Claimant tends to have difficulty focusing in large class situations and is often off task.  The teacher also stated that when Claimant is redirected, he can do well.  The records and testimony from Medina also indicate that Claimant has problems completing his homework.  While Claimant does have problems in this domain, there is sufficient evidence to support the ALJ's conclusion that Claimant's impairment does not seriously interfere with his ability to "independently initiate, sustain or complete activities," and thus Claimant's limitation is less than marked. § 416.926a(e)(2)(i).

## VI.

For the aforementioned reasons, the Court will affirm in part the decision of the Commissioner and remand this matter in part to the Commissioner for further proceedings.  The Court will issue an appropriate order.


Dated: May  24 , 2006.

                                    s/Joseph E. Irenas
                                    JOSEPH E. IRENAS, S.U.S.D.J.

23